# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW SLAVISH and, <br> CAROL SLAVISH, Administrators <br> Of the Estate of JASON C. SLAVISH, <br> Decedent, and in their own right as <br> Decedent's Parents, <br><br> Plaintiffs, <br><br> VS. <br><br> SIMPLEXGRINNELL, L.P., <br><br> Defendant. | CASE NO.: 3:13 - 0631 <br><br> JUDGE MANNION <br><br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION OF PROCTER & GAMBLE PAPER PRODUCTS CO. TO QUASH SUBPOENA AND TO COMPEL PRODUCTION

AND NOW, come the Plaintiffs, Andrew Slavish and Carol Slavish, Administrators of the Estate of Jason C. Slavish, Decedent ("Plaintiffs"), and in their own right as Decedent's Parents, by and through their attorneys, Comitz Law Firm, LLC, and hereby submits the following Brief in Opposition to Motion of Procter & Gamble Paper Products Co. to Quash Subpoena Issued by Counsel for Plaintiffs.

1

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiffs commenced this action via the filing of a Complaint on February 19, 2013.  The substance of Plaintiffs' Complaint centers on the death of Plaintiff Jason Slavish ("Jason") while working on Paper Machine 6M at the Procter & Gamble Paper Products Co.'s ("P&G") plant in Mehoopany, Pennsylvania.

Plaintiffs then served a subpoena on P&G on April 4, 2013, along with an attached rider which requested, *inter alia*, documents, pictures and drawings related to Paper Machine 6M, information concerning the manufacturer of Paper Machine 6M, marketing materials related to Paper Machine 6M, consulting services related to Paper Machine 6M, entities who configured and installed electrical equipment related to Paper Machine 6M, maintenance and repair services related to Paper Machine 6M, information regarding the telephone systems in P&G's plant, information relating to the panic and emergency design systems at P&G's plant, and employment records and information regarding Jason.[1]

On April 30, 2013, P&G filed the within Motion to Quash, as well as a Brief in Support, and it refuses to provide Plaintiffs with the requested information.  It should be noted that Defendant did not object to Plaintiffs serving the subpoena and rider at issue.  Plaintiff requires the information requested in its rider to the subpoena served

---

[1] The relevant subpoena and rider are attached to P&G's Motion to Quash and marked Exhibit "B."

on P&G to investigate this matter further and to determine the extent of negligence involved in Jason's untimely death.

## II. ISSUE

Should this Court deny P&G's Motion to Quash Subpoena and allow Plaintiffs access to the relevant, non-privileged information they seek, where P&G's Motion to Quash was untimely filed and the information requested in the rider to the subpoena may lead to additional defendants as well as admissible evidence at trial?

*Suggested Answer*:  Yes.

## III. LAW AND ARGUMENT

Federal Rule of Civil Procedure 45(c)(2)(B) provides, in relevant part, "A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises- or to producing electronically stored information in the form or forms requested. **The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.**"  (emphasis added). Because P&G failed to timely object to Plaintiffs' subpoena, P&G waived its objection to the subpoena and its right to seek to cause the subpoena to be quashed.

As brief procedural background, on or about March 27, 2013, Plaintiffs sent a Notice of Intent to Serve Subpoena addressed to Procter & Gamble Paper Products

3

Co. to counsel for Defendant, stating that if no objection is received within seven (7) days, the subpoena will be served. As Defendant did not object to service of the subpoena, Plaintiff proceeded to serve P&G with a copy of the subpoena. The subpoena requested that P&G provide the documents to Plaintiffs on May 1, 2013. To that end, P&G was personally served by constable with the subpoena on April 4, 2013 (See Exhibit "A," attached hereto and incorporated herein by reference). P&G then proceeded to file the instant Motion to Quash and Brief in Support on April 30, 2013, a full 26 days following its receipt of the subpoena.

Accordingly, as P&G responded to the subpoena well past the 14-day deadline within which to object to the subpoena, P&G waived its objection and should be compelled to produce the documentation requested in the rider to the subpoena. This Court, when faced with an untimely objection, has dismissed objections and motions to quash routinely. Grider v. Keystone Health Plan Central, Inc., 2005 U.S. Dist. LEXIS 44069 (M.D. Pa., July 28, 2005), City of Petersburg v. Total Containment, Inc., 2008 WL 1995298 (E.D. Pa., May 5, 2008).

Federal Rule of Civil procedure 26(b)(1) provides, "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense- including the existence, description, nature, custody, condition, and location of any

documents or other tangible things and the identify and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

P&G argues that because it is not a party to this action and that Plaintiffs' claims arise out of an alleged defective fire alarm system manufactured and installed by Defendant, that the requested information is irrelevant. Plaintiffs submit that the information requested in the subpoena is highly relevant and could lead to a great wealth of admissible evidence and perhaps additional defendants.

It is undisputed that Jason was killed by Paper Machine 6M on March 24, 2012. Jason was in the course and scope of his employment when a rotating arm of Paper Machine 6M slowly crushed his head against the side of the machine. The evidence gathered thus far, including an accident report and police report, indicates that Jason was in a position where his head became stuck in between the rotating arm of Paper Machine 6M and the side of the machine. Jason called for help several times, and other employees attempted to shut off the machine, to no avail. Employees further attempted to activate the emergency alarm system, which would have shut down

5

Paper Machine 6M, but the alarm system failed to function properly. There are indications that other steps failed as well, and Jason suffered a slow and agonizing death.

Plaintiffs are obviously not seeking to hold P&G directly liable for Jason's death, as P&G itself is immune from suit since it was Jason's employer. However, P&G is in possession of information essential to Plaintiff's claims and potential claims of other entities. The information requested by Plaintiffs, including manufacture's information, consulting services regarding Paper Machine 6M, entities who configured and installed electrical equipment related to Paper Machine 6M, are relevant in determining what went wrong on the date of Jason's death and certainly could lead to what caused Jason's death. It is true that the claim moving forward against Defendant relates to the fire alarm system, but that fire alarm system was tied into Jason's death in that it was tied into Paper Machine 6M and, if working properly, could have prevented the tragedy.

P&G further argues that the information related to Paper Machine 6M is proprietary and confidential to the day-to-day operations of P&G and the ultimate production of its consumer product. Plaintiffs certainly respect any proprietary and confidential information, and would be amenable to entering a confidentiality agreement or any other means to protect this privileged information.

The evidence thus far has shown that multiple aspects of the operations and shut-down of Paper Machine 6M went wrong at P&G's plant on March 24, 2012. Plaintiffs are moving forward with this action against Defendant due to the fire alarm system failing. It is believed the fire alarm system was tied into the ability to shut down Paper Machine 6M. Further, the only entity in control of the information Plaintiffs need to progress this action is P&G. The documents requested from P&G are relevant in the pursuit of justice to determine the exact cause of Jason's death, and in this regard they can certainly lead to admissible evidence.

## IV. CONCLUSION

For all of the aforesaid reasons, Plaintiffs, Andrew Slavish and Carol Slavish, Administrators of the Estate of Jason C. Slavish, Decedent, and in their own right as Decedent's Parents, respectfully request that this Honorable Court deny the Procter & Gamble Paper Products Co.'s Motion to Quash Subpoena and thereby allow Plaintiffs to access the information requested.

**[Signature Block on Following Page]**

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | COMITZ LAW FIRM, LLC |
| DATED: <u>May 14, 2013</u> | BY: */s/ Jonathan S. Comitz* <br> JONATHAN S. COMITZ, ESQ. <br> I.D. NO.:  90914 <br> 1324 Memorial Highway <br> Shavertown, PA 18708 <br> (570) 901.1235 <br> (570) 901.1240 (fax) <br> jcomitz@comitzlaw.com |
|  | Attorney for Plaintiff |